IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JIMMY LEE WHEELER,

      Plaintiff,

v.                                                                CASE NO. 5:15-cv-232-WTH-GRJ

D MADDOX, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 106, Defendants Foster

and Johnson's Motion for Summary Judgment. Plaintiff has filed a

response in opposition, (ECF No. 111), and the motion is therefore ripe for

review. For the reasons discussed below, Defendants' motion for summary

judgment should be granted.

## I.  BACKGROUND

Plaintiff, an inmate in the custody of the Florida Department of

Corrections ("FDOC") at Northwest Florida Reception Center ("NWFRC"),

initiated this case by filing a *pro se* complaint pursuant to 42 U.S.C. §

1983. (ECF No. 1.) Plaintiff brought claims against Defendant Officer

Derrick Johnson ("Officer Johnson") and Defendant Officer J. Foster

("Officer Foster") in their individual and official capacities for denying

Plaintiff meals in retaliation for talking and filing grievances, which Plaintiff

alleges violates his rights under the First and Eighth Amendments. (*Id.*)[1]

Plaintiff also claimed Officer Johnson was deliberately indifferent to

Plaintiff's serious medical needs in violation of the Eighth Amendment. (*Id.*)

As relief, Plaintiff sought declaratory judgment, injunctive relief, and

compensatory and punitive damages against each Defendant. (*Id.*)

Officer Johnson and Officer Foster (collectively "Defendants")

thereafter filed a motion to dismiss Plaintiff's claims. (ECF No. 58.) On

October 24, 2016, the Court entered a report and recommendation

recommending that the motion should be granted as to Plaintiff's claims

against Defendants in their official capacities and Plaintiff's request for

declaratory and injunctive relief. (ECF No. 69.) The district judge adopted

the Court's report and recommendation on December 6, 2016. (ECF No.

73.) Accordingly, only Plaintiff's First and Eighth Amendment claims for

---

[1] Plaintiff also brought claims against four other Defendants—Warden D.
Maddox, Colonel Ricky Silcox, Sergeant Grier, and Officer A. Johns. (ECF No. 1.) The
Court declined to serve Warden Maddox and Colonel Silcox because Plaintiff
failed to state a claim for relief against those Defendants. (ECF Nos. 7 at 1 n.1, 41–42.)
Sergeant Grier was served but was  dismissed from the
case. (ECF Nos. 26–27.) Although there was an attempt to serve Defendant
Johns, the proper individual could not be identified and the Court subsequently granted
Plaintiff's motion to voluntarily dismiss Officer Johns from the case as well. (ECF No.
71.)

damages against Defendants in their individual capacities remain.

Defendants have now filed the instant motion for summary judgment, arguing that the undisputed evidence demonstrates they are entitled to judgment as a matter of law. (ECF No. 106.)

## II.  EVIDENCE

### Denial of Meals

Plaintiff contracted food poisoning on February 13, 2014, from the breakfast served at NWFRC. (ECF No. 111 at 12 ("Pl. Aff.").) The infectious disease from the spoiled food entered Plaintiff's blood stream, contaminating his blood. (*Id.*)

After the food poisoning incident Plaintiff was prescribed a low residue diet, which consisted of soft foods, because his jaw was too sore and his stomach too weak to handle heavy food. (ECF No. 106-1, 35:6–13 ("Pl. Dep.").) Plaintiff was also prescribed the low residue diet four additional times between May 2014 and early 2016. (*Id.* 36:8–25, 37:1–6.) According to Plaintiff, Nurse Davis, however, kept discontinuing Plaintiff's low residue diet approximately within a week or so after it had been prescribed. (*Id.* 37:13–24.) Plaintiff could not eat the regular meals, so he would give the meals away. (*Id.* 44:10–12.)

Meals are served three times a day at NWFRC. (*Id.* 72:22–24.)

Colonel Silcox maintains a policy at NWFRC that "if you're talking, you're walking," meaning that if you talk during meal service you do not get to eat. (*Id.* 70:16–21.) "No-talking" is painted on the chow hall walls. (*Id.* 99:18–20.)

Between May 2014 and September 2015, Defendants and other officers denied Plaintiff a total of 28 meals. (*Id.* 57:21–24, 58:1–5, 72:10–13, 91:2–12.) Plaintiff was denied two meals on April 30, 2015, because he had a "conflict" with both meals. (*Id.* 92:1–3.)  The other meals Plaintiff was denied occurred all on separate days within a short period of time. (*Id.* 92:1–25, 92:1-5.)  The evidence shows that within the course of a week Plaintiff was only denied two or three meals. (*Id.* 72:10–12.) Plaintiff was not able identify the specific days when he was denied meals.  (*Id.* 92:13–16.)  Plaintiff did identify one example of an occasion when he was denied a meal. On that unidentified date Plaintiff says he was coming though the meal line and asked for an alternate try because he does not eat meat. (*Id.* 58:12–14.) Upon asking for an alternate meal, Officer Johnson made Plaintiff dump his tray for talking. (*Id.* 58:14–25.)

Plaintiff alleges the meals were denied solely to serve as abusive conduct. (*Id.* 68:16–21.)  But neither Officer Johnson nor Officer Foster

aver they denied Plaintiff meals because they *wanted* to deny him meals. (*Id.* 70:14–19.) Instead, Defendants assert they denied Plaintiff meals because they were enforcing orders regarding the no-talking policy. (*Id.* 70:14–19, 123:1–6.)  Plaintiff concedes that he has no personal knowledge regarding whether the meals were denied as retaliation. (*Id.* 67:17–25, 68:1–21.)  And Plaintiff does not dispute that when he was denied meals for talking Defendants would not have been aware of the topic of his conversations. (*Id.* 99:4–14.)

Plaintiff alleges he is approximately 6 feet 1.5 inches tall and weighs approximately 175 pounds. (*Id.* 109:19, 110:19.) Some of Plaintiff's medical records, however, reflect that Plaintiff is 5 feet 11 inches tall, while other medical records reflect that Plaintiff is 6 feet 1 inch tall. (ECF No. 106-2 at 7, 13 ("MR/Maier Dec.").)

According to Plaintiff, a healthy weight for him is somewhere around 185 pounds. (*Id.* 109:22–24.) He weighed 181 pounds when he entered the FDOC in April 2010. (MR/Maier Dec. at 7.) Between May 2014 and December 2015, Plaintiff's weight fluctuated between a low of 145 pounds and a high of 163 pounds. (*Id.* at 8–18.)

Plaintiff says he has lost approximately 50–60 pounds. (Pl. Dep.

16:4–5.)  He attributes his weight loss to multiple events: (1) the February

2014 food poisoning and blood contamination incident (*Id.* 16:8–10); (2)

side effects from using Risperdal[2] (*Id.* 16:15–20); (3) being deprived of

meals (*Id.* 33:22–23); (4) eating the regular diet when his low residue diet

was discontinued by the nurse (*Id.* 44:10–13); and (5) not being able to

workout (*Id.* 110:7–14).

Albert Carl Maier, M.D., Senior Physician for the FDOC, filing a

declaration attesting that the Body Mass Index ("BMI") "is a widely

accepted tool that is commonly used in the medical community" to

measure "whether individuals are underweight, overweight, or obese."

(MR/Maier Dec. at 1 ¶¶ 1, 4.) "A BMI of 18.5 and below for an adult of any

sex or age is in the underweight category." (*Id.* ¶ 5.) A BMI of 25.1 and

above for an adult of any sex or age is in the overweight category." (*Id.* ¶

5.) Doctor Maier avers:

> An adult male of 5 feet 11 inches and 145 pounds has a BMI of
> 20.2, which is considered to be within the normal or healthy
> weight category. An adult male of 5 feet 11 inches and 185
> pounds has a BMI of 25.8, which is considered to be
> overweight category.

---

[2] This was transcribed in the deposition transcript as "Risterdal," but the parties
agree that the correct name is "Risperdal."

(*Id.* ¶ 6.) An adult of either 6 feet 1 inch or 6 feet 2 inches weighing 145 pounds has a BMI of 19. (MR/Maier Dec. at 23.)[3]

## Denial of Medical Care

On some unidentified date or before April 30, 2015, Plaintiff submitted a sick call request to see the nurse for pain in his neck, throat, jaw, ear, and toe, which he had been experiencing since his medication was discontinued almost a year earlier on May 16, 2014. (Pl. Dep. 79:3–25, 83:13–16.)  He had been to medical for these same issues multiple times before, for which he only received Tylenol. (*Id.* 80:19–23, 81:15–25.)

On April 30, 2015, Plaintiff was called out to Medical pursuant to his sick call request. (*Id.* 79:15–21.)  As soon as Plaintiff was next in line to see the nurse, however, Officer Johnson closed the yard. (*Id.* 79:3–4.) Plaintiff therefore did not see the nurse until three or four days later. (*Id.* 79:7–10.)  During those three or four days Plaintiff says he experienced more pain than he would have experienced if he had seen the nurse on April 30, 2015, and received something for the pain. (*Id.* 82:15–20.) Plaintiff

---

[3] Although Dr. Maier does not attest to this fact, he nonetheless asserts that the copy of the BMI scale attached to his affidavit is a fair and accurate image of the current BMI scale. (MR/Maier Dec. at 1 ¶ 3.)

admits, however, that if he experiences a medical emergency he can

declare a medical emergency and would be taken to medical regardless of

the situation. (*Id.* 83:4–11.)

## III.  STANDARD OF REVIEW

The entry of summary judgment is appropriate only when the Court is

satisfied that "there is no genuine dispute as to any material fact and the

movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

In applying this standard, the Court must examine the pleadings,

depositions, answers to interrogatories, and admissions on file, together

with any affidavits and other evidence in the record "in the light most

favorable to the nonmoving party." *Samples on Behalf of Samples v.*

*Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988.) "The nonmovant need not

be given the benefit of every inference but only of every reasonable

inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir.

1988) ("The summary judgment standard requires that we resolve all

reasonable doubts in favor of the non-moving party, but it does not require

us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.)

The non-moving party may not simply rest on the pleadings, but must use

affidavits, depositions, answers to interrogatories, or other admissible

evidence to demonstrate that a material fact issue remains to be tried. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v.*

*Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005.)

> A party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:
>     (A) citing to particular parts of materials in the record,
> including depositions, documents, electronically stored
> information, affidavits or declarations, stipulations (including
> those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an adverse
> party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

> Furthermore, in civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and
> disputed matters of professional judgment. In respect to the
> latter, our inferences must accord deference to the views of
> prison authorities. Unless a prisoner can point to sufficient
> evidence regarding such issues of judgment to allow him to
> prevail on the merits, he cannot prevail at the summary

judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV.  DISCUSSION

Defendants argue they are entitled to summary judgment as a matter of law in their individual capacities for five reasons: (1) Plaintiff fails to state an Eighth Amendment claim for the denial of meals; (2) Plaintiff fails to state a claim against Officer Johnson for deliberate indifference to a serious medical need; (3) Plaintiff fails to state a First Amendment claim for retaliation; (4) Plaintiff's claims for compensatory and punitive damages are barred under 42 U.S.C. § 1997e(e); and (5) Defendants are entitled to qualified immunity. (ECF No. 106.)

### A.  Eighth Amendment

The Eighth Amendment provides the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. Harsh and unusual conditions of confinement can deprive a prisoner of his rights under the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). Prison conditions only rise to the level of an Eighth Amendment violation,

however, when they involve the wanton and unnecessary infliction of pain.
*Id.* at 347. Prison officials have a duty, under the Eighth Amendment, to
"ensure that inmates receive adequate food, clothing, shelter, and medical
care." *Farmer v. Bernnan*, 511 U.S. 825, 832 (1994)

"The Supreme Court has developed a two-part analysis to govern
Eighth Amendment challenges to conditions of confinement." *Chandler v.
Crosby*, 379 F.3d 1278, 1288–89 (11th Cir. 2004). "First, the deprivation
alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834
(quotation omitted). "The challenged condition must be extreme and must
pose an unreasonable risk of serious damage to the prisoner's future
health or safety." *Chandler*, 379 F.3d at 1289. Second, the prisoner must
show that the prison official "acted with a sufficiently culpable state of mind
with respect to the condition at issue. *Id.* (quoting *Hudson v. McMillian*, 503
U.S. 1, 8 (1992)). "[D]eliberate indifference has three components: (1)
subjective knowledge of a risk of serious harm; (2) disregard of that risk;
(3) by conduct that is more than mere negligence." *Farrow v. West*, 320
F.3d 1235, 1245 (11th Cir. 2003) (internal quotation omitted); *Brown v.
Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004).

### 1.   Denial of Meals

Withholding food by prison officials does not *per se* constitute an

objectively serious deprivation in violation of the Eighth Amendment. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). "Under the Eighth Amendment, a prisoner is only entitled to reasonably adequate food." *Hernandez v. Fla. Dep't of Corrections*, 281 F. App'x 862, 865 (11th Cir. 2008). "A prison does not violate the Eighth Amendment by feeding a prisoner a minimal amount of food for a limited number of days." *Id.* (citing *Novak v. Beto*, 453 F.2d 661, 665, 668 (5th Cir. 1971)); *see Gardner v. Beale*, 998 F.2d 1008 (4th Cir. 1993) (Table) (providing prisoner with only two meals per day with 18 hours between dinner and brunch for 48 days was properly dismissed as insufficient under the Eighth Amendment); *Cunningham v. Jones*, 667 F.2d 565, 565–66 (6th Cir. 1982) (affirming dismissal of prisoner's Eighth Amendment claim where there was no evidence that only being served one meal a day for fifteen consecutive days was insufficient to maintain normal health); *Brown v. Madison Police Dep't*, No. 03-C-177-C, 2003 WL 23095753, at *3 (W.D. Wis. 2003) (dismissing Eighth Amendment claim where prisoner alleged that he was denied two meals on a single occasion).

Nonetheless, the severity and duration of the food deprivation are inversely proportional. *Deapain v. Uphoff*, 267 F.3d 965, 974 (10th Cir. 2001. "[M]inor deprivations suffered for short periods would not rise to an

Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Id.* (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 1999)); *see Simmons v. Cook*, 154 F.3d 805, 809 (8th Cir. 1998) (denying prisoners four consecutive meals over two days violated the objective component of the *Farmer* test); *Cooper v. Sheriff of Lubbock Cty.*, 929 F.2d 1078, 1083 (5th Cir. 1991) (allegation that prisoner was deprived of all food for twelve consecutive days stated viable Eighth Amendment claim); *cf. Novak*, 453 F.2d at 668 (no Eighth Amendment violation where prisoner in solitary confinement was fed two slices of bread per day, unlimited water, and a full meal every three days, for fifteen days).

To be clear the Court does not condone the practice of a prison institution denying a prisoner a meal for simply asking the server to have a different meal because of his dietary restrictions, similar to the denial of soup by "The Soup Nazi" on the television show *Sienfeld* when George asks Yev Kassem, the owner of the soup stand, for a piece of bread.[4] The issue here has nothing to do with this type of arbitrary conduct but rather concerns whether the deprivation of meals in this case—only 28 meals over a nineteen month period—rises to the level of cruel and unusual

---

[4] https:en.wikipedia.org/wki/The_Soup_Nazi (visited on June 27, 2017).

punishment under the Eighth Amendment. For the following reasons the Court concludes that the denial of only 28 meals under the circumstances in this case and during a lengthy period of time does not violate the Eighth Amendment.

It is undisputed that Plaintiff was denied 28 meals over the course of 19 months by Defendants and two other individuals. The problem, however, is that there is no record evidence establishing the exact dates when Plaintiff was denied meals or exactly how many meals were denied by Officer Johnson and Officer Foster.[5]  Additionally, although Plaintiff says he was denied meals during a short period of time, he does not dispute the period of time spanned 19 months. As a matter of simple math, Plaintiff could not have been denied two meals every week for 19 months if he was deprived of 28 meals in total. Even assuming Plaintiff was denied two or three meals a week for several weeks in a row, he was denied two meals on the same day only once. The denial of two meals on the same day does not constitute a violation of the Eighth Amendment. *See Brown*, 2003 WL 23095753, at *3.  Nor does the denial of two or three meals a week for several weeks in a row constitute a violation of the Eighth Amendment.

---

[5] Although Plaintiff says the dates are recorded via grievances, the Court declines to cherry-pick through all the evidence filed in this case in an attempt to ascertain when exactly Officer Johnson and Officer Foster denied Plaintiff meals. *See* Fed. R. Civ. P. 56(c).

*See Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (finding it doubtful that a prisoner missing fifty meals in five months "was denied anything close to a minimal measure of life's necessities," and noting that "[m]issing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period").

In addition to the fact that the number of meals Plaintiff was denied is insufficient to rise to the level of an Eighth Amendment violation, there is no Eighth Amendment violation because Plaintiff has not submitted any evidence demonstrating that he suffered physical harm from not receiving meals 28 times over a span of 19 months. While Plaintiff asserts that he lost 50–60 pounds, Plaintiff's medical records show a different picture. Between May 2014 and December 2015, Plaintiff's medical records show his weight fluctuated between 145 pounds and 163 pounds—only an 18 pound difference.[6]  Additionally, Plaintiff readily admits that various factors contributed to his weight loss including a severe case of food poisoning, medications, his refusal to eat the regular meals when his low residue diet was discontinued, and not being able to workout.  Even so, the undisputed evidence demonstrates that Plaintiff—even at his lowest weight of 145

---

[6] Even using Plaintiff's lowest weight—145 pounds—since entering prison in 2010 at 181 pounds, Plaintiff only lost 36 pounds from when he entered prison.

pounds—was never in the "underweight" category on the BMI scale.

Simply put, Plaintiff has offered no evidence demonstrating that he suffered any physical harm from being denied 28 meals over the course of 19 months. Plaintiff has therefore failed to demonstrate that the deprivation was objectively, sufficiently serious. *See Hernandez*, 281 F. App'x at 866 (routine deprivation of lunch for five days a week for five months did not amount to constitutional violation because plaintiff did not allege deprivation of other meals or that he suffered physical harm from the deprivation).

Even assuming, however, the deprivation is considered objectively, sufficiently serious, there is no evidence demonstrating that either Officer Johnson or Officer Foster acted with a sufficiently culpable state of mind. Rather, the evidence shows (and Plaintiff readily admits) that he was denied meals for violating the institution's "no-talking" during mealtime policy. *See Adderly v. Ferrier*, 419 F. App'x 135, 141 (3d Cir. 2011) (denial of breakfast and lunch for seven days did not amount to deliberate indifference when inmate refused to eat some meals and was legitimately denied others for failing to follow proper procedures regarding meals). Although Plaintiff clearly takes issue with this policy, Plaintiff admits that neither Officer Johnson nor Officer Foster wanted to deny him meals but

instead did so because they were enforcing the no-talking policy.

Moreover, Plaintiff has not provided any evidence that Defendants knew

Plaintiff faced a serious risk of harm from the denial of meals for violating

the no-talking policy.

In short, Plaintiff has failed to demonstrate that Defendants withheld

food from Plaintiff in violation of the Eighth Amendment. Defendants are

therefore entitled to summary judgment on these claims.

### 2.    Denial of Medical Care

Deliberate indifference to the serious medical needs of prisoners

violates the Eighth Amendment's prohibition against cruel and unusual

punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To establish

an Eighth Amendment violation stemming from the deprivation of medical

attention, a prisoner must set forth evidence of an objectively serious

medical need and prove that the officials acted with attitudes of deliberate

indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir.

2003). A plaintiff has a "serious medical need" when the condition "is one

that has been diagnosed by a physician as mandating treatment or one

that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40

F.3d 1176, 1187 (11th Cir. 1994). To show that the prison official was

deliberately indifferent, the plaintiff must prove that: (1) the prison official had a subjective knowledge of a risk of serious harm; (2) the prison official disregarded that risk; and (3) did so by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004); (the prisoner must demonstrate that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *see Brown*, 387 F.3d at 1351.

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("'[W]e disavow any attempt to second-guess the propriety or

adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'"); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1327 (11th Cir. 2007) (*citing Hill*, 40 F.3d at 1189).

The undisputed evidence demonstrates that Officer Johnson was not deliberately indifferent to Plaintiff's serious medical needs. Even assuming Plaintiff's neck, throat, jaw, ear, and toe pain constitute serious medical needs,[7] there is absolutely no evidence that Officer Johnson knew the reason Plaintiff was at sick call or that "closing the yard" somehow would cause a serious risk to Plaintiff. Nor is there any evidence demonstrating that Officer Johnson closed the yard for any reason having anything to do

---

[7] Plaintiff admits that these issues had been ongoing since May 2014, that he had been to medical about these same issues multiple times before, and that the only treatment he would receive is Tylenol. These facts suggest that Plaintiff did not have a serious medical need for Eight Amendment purposes.

with Plaintiff.

Likewise, there is no evidence that Plaintiff's medical condition worsened during the three days in which he had to wait to see a nurse. Despite experiencing pain during those three days, Plaintiff admits that he had been having the same symptoms since he discontinued his medication almost a year earlier. And despite Plaintiff's pain, Plaintiff admits that although he could have declared a medical emergency and would have been permitted to immediately see a medical professional, he did not do so.

Accordingly, Plaintiff has failed to demonstrate that Officer Johnson was deliberately indifferent to Plaintiff's serious medical needs. Officer Johnson is therefore entitled to summary judgment on this claim.

## B.  Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). An inmate is considered to be exercising his right of free speech when he complains to prison administrators about the conditions of his confinement. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

"An inmate may maintain a cause of action for retaliation under 42

U.S.C. § 1983 by showing that a prison official's actions were 'the result of the inmate's having filed a grievance concerning the conditions of his imprisonment.'" *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting *Farrow*, 320 F.3d at 1248).

> To prevail on a retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action (the disciplinary punishment) and the protected speech (the grievance)."

*Id.* (quoting *Smith*, 532 F.3d at 1276); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

Plaintiff has failed to demonstrate that Defendants retaliated against him in violation of the First Amendment. Plaintiff admitted in his deposition that he has no knowledge that Defendants denied him meals out of retaliation. Instead, Plaintiff readily admits that Defendants denied him meals because they were ordered to do so to enforce the prison no-talking during mealtime policy. While Plaintiff characterizes the conduct as a form

of punishment for talking in violation of the no-talking rule, the fact remains that there is simply no evidence that Defendants denied Plaintiff meals in retaliation for filing grievances.

Furthermore, although Plaintiff claims the "punishment" was for talking, there is no evidence that Plaintiff was engaged in constitutionally protected speech or otherwise exercising any First Amendment rights when he was denied meals. Prison officials are "accorded latitude in the administration of prison affairs," including "the withdrawal or limitation of many inmate privileges and rights." *Smith*, 532 F.3d at 1277 (quoting *Cruz v. Beto*, 405 U.S. 319, 321 (1972), *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Thus, an inmate's right to free speech is not protected if affording protection to that speech would be inconsistent with either the inmate's status as a prisoner or the legitimate penological objectives of the corrections system. *Smith*, 532 F.3d at 1277 (quoting *Pell*, 417 U.S. at 822); *see also Turner v. Safley*, 482 U.S. 78, 89–90 (1987) (discussing the four factors used to determine whether a prison regulation is legitimate).

"'If a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct,' and cannot establish the first prong of a retaliation claim." *Roberts v. Pichardo*, No. 11-13378-C, 2012 WL 12109911, at *1 (11th Cir. June 1, 2012) (quoting *Smith*, 532 F.3d at

1277). "The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Furthermore, the contents of Plaintiff's speech has nothing to do with the denial of meals for talking in the chow hall. Plaintiff admits that when he was denied meals Defendants would have been unaware of the topics of his conversations. He also admits that the no-talking policy was a blanket policy in the chow hall during mealtime. There is no evidence that the no-talking policy was not related to a legitimate penological objective, or that Plaintiff was somehow singled out from the prison population at large by the policy.

Courts have consistently concluded that a blanket restriction on inmate speech in the chow hall and other specific locations within a prison is a reasonable restriction and does not constitute a deprivation of an inmate's First Amendment right to free speech. *See Hendrickson v. McCreanor*, 199 F. App'x 95 (3d Cir. 2006) (district court properly awarded summary judgment to defendants on claims that the "no talking during meals" policy violated prisoners' constitutional rights because the "no talking" policy was rationally related to the prison's interests at stake); *Holmes v. Dalrymple*, No. CV-312-099, 2013 WL 504690, at *3 (S.D. Ga.

Jan. 15, 2013), *report and recommendation adopted*, 2013 WL 504688 (S.D. Ga. Feb. 7, 2013) (dismissing plaintiff's claim that prison's "no talking" policy violated his First Amendment rights where plaintiff's allegations made "clear that he simply broke a prison rule and was subsequently disciplined for the infraction); *Taylor v. Ozmint*, No. CA 0:10-50-HMH-PJG, 2011 WL 286133, at *5 (D.S.C. Jan. 7, 2011), *report and recommendation adopted*, 2011 WL 285876 (D.S.C. Jan. 27, 2011), *vacated* (Feb. 1, 2011), *report and recommendation adopted as modified*, 2011 WL 441934 (D.S.C. Feb. 7, 2011) (dismissing prisoner's claim that prison policy restricting inmate speech while waiting in the cafeteria line because prisoner failed to allege conditions that would violate the *Turner* standard); *Duncan v. Quarterman*, No. 2:09-CV-0187, 2009 WL 2614395, at *3 (N.D. Tex. Aug. 26, 2009) (dismissing as frivolous plaintiff's claim that prison's enforcement of "No Talking" signs violated his First Amendment right to free speech); *Lamar v. Coffield*, 353 F. Supp. 1081, 1083 (S.D. Tex. 1972) (dismissing plaintiff's claim that the denial of the right to speak in the mess hall, corridors, and during the performance of his duties violated his right to free speech).

The undisputed evidence demonstrates that Defendants did not retaliate against Plaintiff in violation of his First Amendment rights.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.

## C.  Compensatory and Punitive Damages

Even assuming, *arguendo*, that there were disputed issues of material fact regarding Plaintiff's Eighth Amendment claim that precluded summary judgment, Plaintiff is not entitled to compensatory or punitive damages on this claim. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). "[T]he physical injury must be more than de minimis, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999). Discomfort does not equate to physical injury. *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007); *see also Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (plaintiff's claims for compensatory and punitive damages were barred by § 1997e(e) where plaintiff complained of vague injuries to his back and scrapes and marks on his knees and legs).

Here, there is no evidence that Plaintiff suffered more than *de minimis* physical injuries from the denial of 28 meals over the course of 19 months. Plaintiff says he lost 50–60 pounds. His medical records

demonstrate otherwise. Regardless, as discussed, there is no evidence other than Plaintiff's speculation that the denial of 28 meals over 19 months even contributed to Plaintiff's weight loss. Even assuming it did, however, Plaintiff's BMI—even at his lowest weight—remained within the normal/healthy category. *See Thompson v. Sec'y, Fla. Dep't of Corrections*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (noting that the Eleventh Circuit has not adopted a definition of "de minimis," but acknowledging "one court has described it as 'a physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional'") (quoting *Luong v. Hatt*, 979 F. Supp. 481 (N.D. Tex. 1997). There is no evidence that Plaintiff's weight loss caused him any other physical injuries. *See Rainey v. Huertas*, No. 12-CV-01434-CMA-MEH, 2013 WL 491925, at *13 (D. Colo. Jan. 17, 2013) (weight loss due to inability to chew not more than a *de minimis* injury).

Similarly, there is no evidence that Plaintiff suffered more than *de minimis* physical injuries from being unable to see the nurse on April 30, 2015. Although Plaintiff's pain persisted for three days until he was able to see the nurse, pain for a short period of time without more does not equate to more than a *de minimis* injury. *See Quinlan v. Personal Trans. Servs., Co.*, 329 F. App'x 246, 249 (11th Cir. 2009) (pretrial detainee's complaints

of headaches, difficulty breathing, temporary chest pain, and lingering back pain were not greater than *de minimis* injuries); *Parker v. Dubose*, No. 3:12cv204/MCR/CJK, 2013 WL 4735173, at *2 (N.D. Fla. Sept. 3, 2013) (concluding that plaintiff's black eye, bloody lip, scrapes, abrasion, and back pains did not amount to more than *de minimis* physical injury and were insufficient to meet § 1997e(e)'s physical injury requirement); *Hall v. Plumber Official*, No. 10-20814, 2011 WL 1979721, at *14 (S.D. Fla. Apr. 26, 2011) (allegations of dehydration, severe diarrhea, gastroesophogeal reflux disease, chest pain, abdominal pain, bleeding gums, plaque buildup, depression, and constant, severe, and unnecessary pain did not show an injury greater than *de minimis*). Accordingly, even if Plaintiff established that Defendants violated his constitutional rights—which he did not—he would not be entitled to compensatory or punitive damages.

## D.  Qualified Immunity

Even assuming Defendants violated Plaintiff's constitutional rights, they would nonetheless be entitled to qualified immunity in their individual capacities. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court must consider two factors: (1) whether the facts show that the officer's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed above, the undisputed facts demonstrate that Defendants' conduct did not violate Plaintiff's First or Eighth Amendment rights. Even if it had, however, Plaintiff has pointed to no authority clearly establishing that Defendants' conduct—which is undisputed in this case—was objectively unreasonable. *See Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (once the government official proves she was acting within the scope of her discretionary authority, the burden shifts to the plaintiff to demonstrate that the defendant's conduct violated a clearly established constitutional right).[8] Nor can the Court locate any such authority. Defendants are therefore entitled to qualified immunity.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' Motion for Summary Judgment, ECF No. 106, should be

---

[8] There is no question that Defendants were acting within their discretionary authorities as officers at the institution during the involved incidents.

**GRANTED.**

**IN CHAMBERS** at Gainesville, Florida, this 27th day of June 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**